# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2542

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Heather Louise Vanderpool, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: January 14, 2009
Filed: May 14, 2009

_____

Before LOKEN, Chief Judge, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Heather Louise Vanderpool pled guilty to one count of possessing with intent to distribute more than five grams of actual methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(viii). The district court[1] applied a two-level sentencing enhancement because Vanderpool distributed methamphetamine in a correctional facility. The district court then sentenced Vanderpool to 77 months imprisonment. We affirm.

_____

[1]The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

On January 24, 2008, Vanderpool traveled to the Thomas F. Eagleton United States Court House in St. Louis, Missouri, to be sentenced after pleading guilty to participating in a conspiracy to manufacture methamphetamine. On her way to the courthouse, Vanderpool was pulled over by police officers in Wentzville, Missouri, and arrested pursuant to warrants for outstanding traffic violations. Unbeknownst to the officers, Vanderpool possessed approximately 18 grams of methamphetamine at the time of her arrest. The following day, Vanderpool was sentenced to 46 months imprisonment, remanded to the custody of the United States Marshals Service, and transported to jail in Lincoln County, Missouri, to await designation by the Federal Bureau of Prisons. Vanderpool failed to advise law enforcement officials that she possessed methamphetamine.

While incarcerated in Lincoln County, Vanderpool shared a cell with Gina Morrison. On February 3, 2008, prison personnel received an anonymous tip that Morrison possessed methamphetamine. A female correctional officer searched Vanderpool and Morrison and discovered a small, plastic bag inside Vanderpool's mouth that contained actual methamphetamine. Later that day, prison personnel received information from another female inmate that Vanderpool may have concealed something inside her jumpsuit. When a female correctional officer confronted Vanderpool with this new information, Vanderpool retrieved another small bag containing actual methamphetamine from inside her vagina. Vanderpool then confessed that she had distributed some methamphetamine to Morrison inside the prison facility.

Vanderpool pled guilty to one count of possessing with intent to distribute more than five grams of actual methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(viii). At the sentencing hearing, the district court calculated a base offense level of 26. See United States Sentencing Commission, Guidelines Manual, §2D1.1(c)(7) ("at least 5 G but less than 20 G of Methamphetamine (actual)"). The court increased the offense level by two levels,

finding that the object of Vanderpool's offense was the distribution of a controlled substance in a correctional facility.  See id. §2D1.1(b)(3).  The court decreased the offense level by three levels for acceptance of responsibility, see id. §3E1.1, resulting in a total offense level of 25.  With a criminal history category of IV, Vanderpool's initial Guidelines range was 84 to 105 months.  However, the court granted a downward departure of one offense level because Vanderpool provided useful testimony against Morrison, resulting in an ultimate Guidelines range of 77 to 96 months.  See id. §5K1.1, p.s.  The court then sentenced Vanderpool to 77 months imprisonment.  Absent the enhancement for distributing a controlled substance in a correctional facility, Vanderpool's ultimate Guidelines range would have been 63 to 78 months.  Improperly calculating the Guidelines range constitutes significant procedural error.  E.g., United States v. Spikes, 543 F.3d 1021, 1023 (8th Cir. 2008).

Vanderpool appeals her sentence, arguing that the district court erred in applying the two-level enhancement pursuant to USSG §2D1.1(b)(3) because the government did not prove that the *object* of Vanderpool's offense was to distribute a controlled substance in a correctional facility.  Instead, Vanderpool contends that the court impermissibly rested its finding on the fact that she *knowingly* distributed drugs in such a facility.  "This court reviews the district court's interpretation of the Sentencing Guidelines de novo, and its application of the Guidelines to the facts for clear error."  United States v. Miller, 560 F.3d 751, 753 (8th Cir. 2009).

Guidelines section 2D1.1(b)(3) reads:  "If the object of the offense was the distribution of a controlled substance in a prison, correctional facility, or detention facility, increase by **2** levels."  Id. §2D1.1(b)(3).  In applying this enhancement, the district court reasoned as follows:

> [D]efendant's intent may be discerned by defendant's conduct.  That is acts the defendant knowingly commits may be indicative of the defendant's intent.

Here [] it's undisputed that Miss Vanderpool had methamphetamine in her possession in the jail from as early as January 24th until February the 3rd when it was discovered by the jail authorities. She never told anyone that she had it in her possession. She kept it concealed for more than a week and she was in a jail facility when she distributed some of that methamphetamine to her cellmate. We know . . . Miss Vanderpool intended to distribute methamphetamine in a jail facility because she distributed methamphetamine in a jail facility. It wasn't an accident. She intended and deliberately and knowingly shared the meth with her cellmate, so the guideline in issue provides that an offense level is to be increased by two levels . . . .

Now maybe on January 24th she had some different plan with respect to . . . the methamphetamine that she was concealing on her person. . . . [But] [w]hat she did was she kept it concealed and then ultimately she distributed it . . . to someone within the jail . . . . She did it deliberately, she did it knowingly, she did it intentionally and that was her object. She pled guilty to possession with intent to distribute actual methamphetamine. She had possession and she had the intent to distribute and she did in fact distribute methamphetamine and . . . she knew she was in jail.

(Sentencing Tr. 7-8.)

Because Vanderpool pled guilty to possession with *intent* to distribute actual methamphetamine, there can be no dispute that the *object* of her offense was to distribute a controlled substance.[2] However, Vanderpool believes the government must prove that, prior to her incarceration, she formed the intent to transport drugs into the jail with the purpose of distributing them therein. We find this argument unpersuasive. The Guidelines require only that "the object of the offense was the

[2]The terms "object" and "intent" are synonymous. Compare Webster's Third New International Dictionary 1176 (1986) (defining "intent" as "an end or object proposed"), and id. at 1555 (defining "object" as "something (as an end, aim, or motive) by which the mind or any of its activities is directed").

distribution of a controlled substance in a prison, correctional facility, or detention facility . . . ." USSG §2D1.1(b)(3). There simply is no temporal requirement that intent to distribute a controlled substance in a correctional facility must be formed prior to entering the correctional facility. Section 2D1.1(b)(3) is not ambiguous, and we decline Vanderpool's invitation to apply the rule of lenity. See United States v. Clawson, 408 F.3d 556, 558-59 (8th Cir. 2005) (refusing to apply rule of lenity to Guidelines enhancement in the absence of a "grievous ambiguity or uncertainty in [its] language or structure").

When Vanderpool committed the instant offense, the object of her offense was to distribute a controlled substance to her cellmate in the Lincoln County jail. We hold that the district court correctly interpreted Guidelines section 2D1.1(b)(3) and did not clearly err when it applied section 2D1.1(b)(3) to increase Vanderpool's offense level by two levels. Accordingly, Vanderpool's sentence is affirmed.

_____